| | | |
|---|---|---|
| RENEE HOFFMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16 C 9411 |
| | ) | |
| DUPAGE COUNTY, Illinois, SHERIFF | ) | Judge Rebecca R. Pallmeyer |
| ZARUBA in his official capacity as sheriff | ) | |
| of DuPage County, Illinois, SHERIFF DEPUTY | ) | |
| J. RITTER, SHERIFF DEPUTY LYTHBERG, | ) | |
| SHERIFF LT. EIFERT, SHERIFF SGT. DORN, | ) | |
| SHERIFF SGT. CAUNCA, SHERIFF DEPUTY | ) | |
| SLATTERY, SHERIFF DEPUTY SCIANNA, | ) | |
| SHERIFF SGT. CAMPBELL, SHERIFF DEPUTY | ) | |
| SIEKMANN, SHERIFF SGT. TEGTMYER, | ) | |
| SHERIFF SGT. VANHOOSE, MSU GARCIA, | ) | |
| MSU KACZYNSKA, MSU URBONAS, MSU | ) | |
| WEIGEL, MSU SWEENEY, MSU VENECIA, | ) | |
| and MSU HUGHES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Renee Hoffman was incarcerated for six days in the DuPage County Jail in October 2015. In this lawsuit, Hoffman has sued the County, its Sheriff in his official capacity, and eighteen DuPage County officers and medical providers, alleging that all were deliberately indifferent to her serious medical conditions, and that the inadequate treatment she received has resulted in ongoing injury. Her Second Amended Complaint alleges a denial of medical care (Count I), conspiracy (Count II) and failure to intervene (Count III), all in violation of 42 U.S.C. § 1983; in addition, Plaintiff alleges state law claims of intentional infliction of emotional distress (Count IV), willful and wanton conduct (Count V), and negligence (Count VI) and names the County of DuPage as liable to indemnify the individual Defendants for the state law claims (Count VII). The medical provider Defendants (Garcia, Kacynska, Urbonas, Weigel, Sweeney, Venecia, and Hughes) have moved to dismiss Counts II, III, IV, and VI, and the jail officers (Campbell, Caunca, Dorn, Eifert, Lythberg, Ritter, Scianna, Siekmann, Slattery, Tegtmyer,

Vanhoose) have joined that motion.  For the reasons explained here, the motions are granted in part and denied in part.

**BACKGROUND**

The court views the allegations of the Second Amended Complaint in the light most favorable to Plaintiff Hoffman.  See *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011).  Plaintiff Renee Hoffman alleges she was incarcerated for six days at the DuPage County Jail in October 2015. (Second Amended Complaint [34], ¶ 8.)  At the time she was taken into custody, Plaintiff alleges, she suffered from diabetes, chronic pulmonary disease, and other unspecified "serious medical conditions" and was taking prescribed medications.  (*Id.* ¶ 9.) Plaintiff informed the individual Defendants, including medical staff, about her medical conditions and prescriptions.  (*Id.*)  The individual Defendants confiscated Plaintiff's prescribed medications and did not return them to her at any time during her incarceration.  (*Id.* ¶¶ 9, 10.)

In addition to her medications, Plaintiff required an oxygen machine to breathe. (*Id.* ¶ 11.)  Although Plaintiff's husband had an operable oxygen tank for Plaintiff to use, "[o]ne or more of the Individual Defendants" refused to permit her husband to bring the oxygen tank to the plaintiff at any time while she was in jail. (*Id.*)  Instead, Defendants provided Plaintiff with other oxygen equipment that "was defective and allotted less than half of the oxygen that she was prescribed," with the result that Plaintiff had trouble breathing throughout the time she was incarcerated.  (*Id.*)

Plaintiff also needed a wheelchair while she was in jail.  (*Id.* ¶ 12.)  She alleges that the individual Defendants "eventually" provided one, but because "the space within [Plaintiff's] cell was not large enough to accommodate the wheelchair," Plaintiff at one point "tipped over on the wet cell floor" and fell out, "causing pain and injury." (*Id.*)

In addition to the lack of medication, the inadequate oxygen equipment, and the need for a wheelchair, Plaintiff "developed vomiting and diarrhea" during her incarceration at DuPage County Jail. (*Id.* ¶ 13.)  "One or more of the Individual Defendants" failed to provide Plaintiff with

a fresh uniform or fresh underwear, instead instructing Plaintiff to wash her soiled clothing in the toilet, which Plaintiff did "out of necessity." (*Id.*)

Plaintiff complained to one or more Defendants "throughout her incarceration about her serious medical needs and lack of appropriate medical care," but her complaints were ignored. (*Id.* ¶ 14.) During Plaintiff's incarceration, none of the Individual Defendants provided her with "appropriate amount of her required medication." (*Id.* ¶ 15.) Although the medications and operable oxygen tank were "authorized by Plaintiff's doctor and pharmacist," "[o]ne or more of the Individual Defendants" prevented Plaintiff's husband from providing the medications and the operable oxygen tank. (*Id.*) One or more of the Defendants told Plaintiff that the Jail "was not a nursing home." (*Id.* ¶ 16.)

At the time she was released from DuPage County Jail, Plaintiff "was not feeling well." (*Id.* ¶ 17.) Within 24 hours of her release, her condition deteriorated to the point where her family could not wake her. (*Id.*) Family members took her to the hospital where she was diagnosed with an "infection on her rectal area that developed during her incarceration and she had sepsis as a result." (*Id.*) Plaintiff was admitted to the Intensive Care Unit and had a "lengthy hospital stay." She was treated with an insulin pump, which she continues to use, and after her time in the hospital was treated at an out-patient wound care program for her rectal infection, which, she alleges, has still not completely healed. (*Id.*)

Plaintiff believes these allegations support claims for denial of medical care, conspiracy, and failure to intervene, as well as state law claims of intentional torts and negligence. The Medical Defendants have moved to dismiss Counts II, III, and IV (conspiracy, failure to intervene, and intentional infliction of emotional distress) for failure to state a claim, and seek dismissal of Count VI (the negligence claim) on the strength of the Illinois Tort Immunity Act. The correctional officer Defendants have joined the motion.

**DISCUSSION**

To survive a motion to dismiss for failure to state a claim, factual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1098 (7th Cir. 2015); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). While the complaint does not need detailed factual allegations, the plaintiff is required to provide the grounds of his entitlement to relief beyond labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014); *McReynolds v. Merrill Lynch & Co., Inc.,* 694 F.3d 873, 885 (7th Cir.2012); *Ashcroft v. Iqbal,* 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  A well-pleaded complaint contains "a short and plain statement . . . showing that the pleader is entitled to relief . . . ." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).  The court construes the complaint in the light most favorable to the pleader, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in the pleader's favor.  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Plaintiff here argues that her allegations of conspiracy, failure to intervene, and intentional infliction of emotional distress (Counts II, III, and IV) are sufficient under these generous standards.  As explained below, with respect to each of these claims, the court concludes that greater detail is required to support these claims.

**A.      Count II – Conspiracy**

In support of her conspiracy theory, Plaintiff simply incorporates all of the factual allegations summarized above, and adds:

> 28.      The Individual Defendants reached an agreement among themselves to deprive Renee Hoffman of her constitutional rights and to protect one another from liability for depriving Renee Hoffman of her rights, all as described in the various paragraphs of this Complaint.

> 29.      In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

Defendants contend these allegations lack "necessary support to place Defendants on notice of what they are being called to defend."  (Defendants' Reply to Plaintiff's Response [78], at 2.) The court agrees. Beyond incorporating her allegations concerning medical care, Plaintiff's conspiracy claim is little more than a recitation of the claim's elements.  *See Logan v. Wilkins*, 644 F.3d 577, 583 (7th Cir. 2011) (the elements of § 1983 conspiracy are "(1) a state official reached an understanding to deprive plaintiff of his constitutional rights; and (2) those individual(s) were willful participants in joint activity with the State or its agents").  Although Plaintiff alleges that Defendants "reached an agreement amongst themselves to deprive [her] of her constitutional rights" and "committed overt acts" and participated in "joint activity," Plaintiff fails to include any facts that describe what those acts or activities entail.  Such pleading is insufficient to survive a 12(b)(6) motion.  *See Twombly*, 550 U.S. at 555 ("Although the complaint need not contain detailed factual allegations, labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

Plaintiff is correct that she need not identify each Defendant's contribution to the conspiracy nor demonstrate an overt act at this stage of the pleading, but she is required to introduce enough facts from which the court can draw the inference that she is entitled to relief. In *Geinosky v. Chicago*, 675 F.3d 743, 749 (7th Cir. 2012), for example, the court reversed dismissal of a civil conspiracy claim but emphasized the allegations that "several members of the same police unit allegedly acted in the same inexplicable way against a plaintiff on many different occasions."  As the Court of Appeals observed, "[i]t is a challenge to imagine a scenario in which that harassment would not have been the product of a conspiracy."  *Id.*  In this case, in contrast, the court can readily imagine a number of jail officials and providers failing to take prompt action to address Plaintiff's medical needs, without any meeting of the minds.

True, even post *Twombly/Iqbal*, a plaintiff need only identify the parties to an alleged conspiracy, its general purpose, and the approximate date on which it occurred, see *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002); *Boothe v. Sherman*, 66 F. Supp. 3d 1069,

1078 (N.D. Ill. 2014). Plaintiff contends that her complaint meets this test in that it identifies the "parties (MSU Weigel in concert with the remaining defendants), general purpose (to deny Plaintiff medical care and protect one another from liability), and approximate date (the six days spanning the length of her incarceration) . . . ." (Plaintiff's Joint Response to Defendant's Motion to Dismiss [73] (hereinafter "Plaintiff's Joint Response"), at 8.) As Defendants observe, however, no allegations within the operative pleading actually allege these factual elements. (Defendants' Reply to Plaintiff's Response [78], at 5.) Plaintiff relies on the statement "[e]ach paragraph of this Complaint is incorporated as if fully restated herein," but she provides no specifics about the alleged agreement, leaving Defendants in the dark about what they allegedly conspired to do, or which individual Defendants were involved with any particular deprivation. In *Boothe*, the plaintiff narrowed the scope of her allegations to "[d]efendants 'testified falsely' and 'destroyed or altered the video tape" of the very incident they allegedly conspired to cover up. *Boothe*, 66 F.Supp.3d at 1075. Here, in contrast, Plaintiff's conspiracy count alleges that she was deprived of a constitutional right, names eighteen officers, and asserts without specifics that the individuals participated in some "joint activity." For all that appears in this complaint, eighteen individuals violated Plaintiff's rights in one way or another without any action in concert. *See Whitney v. Northeast Ill. Reg'l Commuter R.R. Corp.*, No. 15 C 2166, 2015 WL 6594315 (N.D. Ill. Oct. 28, 2015) (allegations of wrongdoing on the part of several defendants do not state a claim of conspiracy absent any allegation of communication between the defendants).

The court notes that significant discovery has occurred since the filing of the operative complaint, and that discovery may well have uncovered factual support for an allegation of conspiracy. None appears in the current complaint, however, so Count II is dismissed without prejudice.

**B.     Count III – Failure to Intervene**

Plaintiff's failure to intervene claim is similarly conclusory.  Again, she incorporates her previous allegations by reference and then adds the following:

> 34.     As described more fully above, one or more of the Individual Defendants had a reasonable opportunity to prevent the violation of Renee Hoffman's constitutional rights, but failed to do so.

> 35.     The Individual Defendants' actions were undertaken intentionally, with malice and reckless indifference to Renee Hoffman's rights.

> 36.     As a direct and proximate result of the misconduct described in this Count, Renee Hoffman's rights were violated and she suffered injuries, including emotional distress.

These statements do indeed state the elements of a failure to intervene claim.  *See Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005) (describing elements of failure to intervene claim).  But nothing about Plaintiff's factual allegations identifies even one of the "one or more Individual Defendants" who had a "reasonable opportunity to prevent the violation," but failed to do so.  There is not even an allegation that any of the eighteen individual Defendants observed one another, let alone that any could have or should have intervened. As the Seventh Circuit has explained, "[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful." *Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).  *See also Atkins v. Hasan,* No. 15 C 203, 2015 WL 3862724, at *2 (N.D. Ill. June 22, 2015) (dismissing claims premised on "group pleading" that offers "no clues as to whether, for the particular conduct described, plaintiffs assert that each and every one of the defendants engaged in that conduct . . . .").  Again, discovery to date may have uncovered additional factual support for this claim.  For now, Count III is also dismissed without prejudice.

**C.     Count IV –  Intentional Infliction Of Emotional Distress (State Law)**

The pattern continues in Count IV.  Plaintiff has incorporated all of her previous factual allegations, and alleges that "the Individual Defendants engaged in extreme and outrageous

conduct"; that they "intended to inflict or knew that there was a high probability that their conduct would cause severe emotional distress"; and that they acted with "malice, willfulness, and reckless indifference." (Second Amended Complaint, ¶¶ 41-43.) The court notes that Illinois case law sets a "high bar" for claims based on intentional infliction of emotional distress. *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017). " '[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' do not amount to extreme and outrageous conduct . . . ." *Id.* at 567. As the court recognized in *Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir.2010), " '[a]n important factor' in determining whether a defendant has committed the tort of intentional infliction of emotional distress 'is whether [the] defendant abused a position of authority.' " Plaintiff's complaint makes a nod in the direction of this requirement when she alleges that one officer instructed her to wash her underwear in the toilet, and another commented that the jail is "not a nursing home." But she has not identified the officers involved in either of these episodes, nor provided a factual basis for concluding that in denying adequate medical attention, all eighteen Defendants were motivated by malice or abusing their authority. Count IV is dismissed without prejudice.

**D.      Count VI – Ordinary Negligence (State Law)**

Count VI of the complaint alleges ordinary negligence. Specifically, after incorporating the factual allegations summarized above, Plaintiff alleges that "the actions of the Individual Defendants breached the duty of care owed to inmates in their care," that the Defendants "were aware that injury would likely result," and that they "recklessly disregarded" the potential consequences of their actions. Defendants ask the court to dismiss these allegations on the basis of the Illinois Tort Immunity Act, 745 ILCS 10/4-103 and 745 ILCS 10/4-105. Defendants emphasize that Plaintiff has also alleged, as a separate count, willful and wanton misconduct (Count V), so her negligence claim must be "evaluated independently" of that claim. (Defendants' Memorandum [62] at 9.)

Under the Illinois Tort Immunity Act, 745 ILCS 10/4-103, a public employee acting within the scope of his or her employment is not liable for failure to provide sufficient equipment, personnel, supervision or facilities at a jail. Another section, 745 ILCS 10/4-105, shields a public employee from liability for any injury caused by the employee's failure to furnish or obtain medical care for a prisoner, unless the employee "knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care." Defendants suggest that the requirement that Plaintiff present evidence of "willful and wanton conduct" renders her negligence claim (Count VI) redundant of the willful and wanton conduct claim in Count V. *See generally Pico v. County of Cook*, No. 04 C 3559, 2004 WL 3670968 (N.D. Ill. Dec. 14, 2004) (granting protection under 4–103 "to the extent that [the plaintiff's] tort claim is based upon an alleged failure to provide sufficient personnel or supervision," but not to the extent that the claims were based on willful conduct).

The law on this issue is not as clear as Defendants suggest. At least some caselaw suggests that the Tort Immunity Act does not shield a public employee from claims of negligence so long as there is evidence that the defendant was on notice of the plaintiff's need for immediate medical attention. Thus, in *Egebergh v. Sheahan*, 955 F. Supp. 965, 968 (N.D. Ill. 1997), the court recognized that a prisoner deprived of necessary medical care may defeat the Illinois Tort Immunity defense either by proving willful and wanton conduct *or* by "meeting the four-prong test of the special duty exception and proving that the negligent breach of that duty caused his or her injury[.]" As the Seventh Circuit noted recently, jail officials may be liable where they have knowledge of some immediate medical need and disregard it. *See Lipsey v. United States*, 879 F.3d 249, 256 (7th Cir. 2018) (adopting this standard in affirming summary judgment in favor of medical defendants but observing that as to "non-medical defendants. . . a negligence standard applies.") Plaintiff's allegations here—her requests for prescribed medications, her need for oxygen equipment and a wheelchair, and her complaints of nausea

9

and diarrhea—presumed true for purposes of this motion, satisfy the requirement that the Defendants had knowledge of an immediate medical need and disregarded it. *See Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007) (recognizing "severe asthma attacks" as an objectively serious condition).

The motion to dismiss Count VI is denied.

## CONCLUSION

Plaintiff Hoffman endured six miserable days in DuPage County Jail and claims ongoing injury as a result of her treatment there. Her allegations of conspiracy, failure to intervene, and intentional infliction of emotional distress are insufficient under relevant pleading standards, however. The motions to dismiss [60, 64] are granted with respect to Counts II, III, and IV only. Plaintiff's First Amended Complaint [32] withdrew a punitive damages claim against DuPage County and identified individual Defendants, and her Second Amended Complaint [34] corrected one name. Plaintiff has not yet made substantive amendments to her complaint, and therefore has leave to file a third amended complaint within 14 days.

ENTER:

Dated: March 27, 2018

REBECCA R. PALLMEYER
United States District Judge